Good morning, your honors. My name is Byron Lynch. I represent Richard Hamp, who is the bankruptcy trustee of Ann Marie Summers in this case. If it pleases the court, I'd like to briefly orient the court and then reserve as much of my time as possible to answer your questions. This case arises out of a transaction in which spouses, married 42 years at a time, took community property cash and purchased a piece of real property and took title in joint tenancy. The respondent alleges that that's separate property. Now, if the real property is held in joint tenancy, at some point in time there had to be a transportation of the community property cash into the separate property joint tenancy property. And the California Family Code, Section 852A. Is that right, incidentally, if you use separate property to buy property, then even if the property purchased is presumptively held in something other than community property form, the source of the money controls or rebutts the presumption? I'm not sure I understand the court's question. Okay. Let's say the $10,000 is community property. I remember it came from the husband's asbestos settlement. That's correct. And let's say the deed creates a presumption of joint ownership in thirds rather than community property between the husband and wife. In a vacuum, that would be true. Now, what does the fact that the $10,000 was community property have to do with the ownership of the real estate? Because the $10,000 was community property, admittedly so, and it was in a transaction. It was used, community property cash was used to purchase the real property, which was taken as joint tenancy separate property. In so doing, by the statute, you have to have a way to transmute the cash, the community property cash, into separate property. There's a change going on there. And the Family Code, Section 852A, coupled with N. Ray McDonald, which is the California Supreme Court case interpreting it, states that the only way that you can transmute that money or community property between spouses is through a declaration that changes, I don't like the word changes, the characterization or ownership of the property. Wouldn't that be true if it had stayed in the form of the money, but once they get the real estate, doesn't the deed accomplish the change? Actually, N. Ray Barnison answered that specific question in the negative, Your Honor. N. Ray Barnison said that the title document gives evidence of the result, not of the change. I mean, I can understand when you might have, let's say, a separate piece of real estate on a separate property, and you convey it through a straw person to turn it into community property or vice versa, that you may want, in other words, it's a straw transaction as far as the third party is concerned, you might want or require some pretty clear indication of the intent of the husband and wife. Actually, Your Honor. But when there's a third party, we've got a third party at arm's length here. Well, as to Aurora, there's no dispute that her interest is in community property. Well, I was thinking of the seller of the land, of the real estate. The seller of the real estate simply conveyed the property to the three parties. Right. And took the money. And took the money, but whatever. The seller of the real estate was not a spouse. I understand that, and that's what I would think might relieve the parties of the need to make their intentions clear. And the answer to that, Your Honor, is under the Family Code, as defined by Enri McDonald, Barnison, and Campbell, states that as between spouses, there's a very special, narrow statute of frauds in which the only way the spouses may convey or may change property from either separate to community or community to separate, the only way they can transmute it is with an express declaration, and that within the four corners of that express declaration, there's an indication of a change of ownership or characterization. I think I understand where we're not connecting now. Okay. I'm thinking transmutation. What does transmute mean? It means to change a thing from one condition to another. If the real estate is owned as community property, then it has to be transmuted to become owned as something else, such as joint tenancy. That would be correct. Likewise, if the money is owned as community property, it has to be transmuted to be changed into non-community property. But the thing about it is the money was never owned as anything but community property, but it's gone. And the real estate was never owned as community property because right from the deed, the conveyance itself, it was always joint property, so it didn't need to be transmuted. Well, you see, what you've done, Your Honor, is you've created an acquisition exception, if you will, to the legislature, which says — I wouldn't view it as an exception. There's no need to transmute something if it hasn't previously been some other thing. You transmute lead into gold because it's lead, but if you acquire gold, you don't have to transmute it. Well, I'd urge the Court to read Barnison carefully because it had exactly the same issue, not with real property. It had it with shares of stock, and it rejected that notion. Counsel, what do you make of the cases like Marriage of Haines where they talk about — Actually, Your Honor, the distinction is M. Ray Haines conceded the joint tenancy. I mean, that was a concession going in. And then the issue there — Well, whether the joint tenancy is conceded or not, it's of record in this case, is it not? Right. And so that doesn't make a difference, does it, whether the joint tenancy is conceded or whether it's of record because it's been — What difference would that make in terms of the outcome of the case? I'm not sure it followed the Court. M. Ray Haines was a case that weighed the presumption, and I forget exactly what it was. It was two presumptions being issued in M. Ray Haines. But the beginning point was it was a concession that was in joint tenancy. The presumption is it's community property unless there is something in the record that reflects a change. And in Haines, the Court said the community property presumption was rebutted by the fact that title was taken as joint tenancy. That's how I read Haines, at least. So tell me where I'm going wrong on that. Okay, I will if you give me a half a minute here. Haines was not about transportation or transmutation. It was a dispute over California Evidence Code 662, which is in dispute here also. Well, could you just go to page 682 of that opinion? Head notes 12, 13, and 14. That's where I'm getting my — I can't. If you'll bear with me, I have a license printout and I have bad eyes, so it's in big print. 682. Welcome to the age of 50 and above. I understand. I'm at 682 under characterization principles. Right. And I'm looking at head notes 12, 13, and 14. And that's where I'm getting my reading that the Court is saying that property is characterized at the time it's acquired, and it can be altered by agreement of the parties or by the way title is taken to the property. Now, tell me why I'm reading that wrong. I agree with that as a statement of law unless there's a transmutation at issue. In other words, if parties go out and, for instance, they take — you start a long-term marriage and you agree that it's going to be joint tenancy property, but the agreement under the Family Code and under McDonald is that within the four corners of that agreement, there has to be language indicating a change in the character or ownership. And I don't have the head notes here. I'm sorry, Your Honor, so I can't tell you. Can you be more specific with maybe the paragraph? Well, it starts with perhaps the most basic characterization factor. Right. I've got it here. It's the time when property is acquired in relation to the party's marital status. Yes. It says the role can be altered by agreement. I agree with that. And then if you go on to the next paragraph, it says, and unless ownership interests are otherwise established by sufficient proof, record title is usually determinative of characterization. Record title may usually be determinative. I'm not here to tell you there's absolute total consistency in the cases under California law. I will tell you this, however, that all of the cases that I've looked at in which transmutation was at issue, and those cases would be the McDonald case, Bibb, cited by the bankruptcy court, Barnison, and Campbell. And Bibb was a case that held that there was an effective transmutation, but it was pursuant to the terms of a deed, which says it was an elderly gentleman, and he granted by grant deed the separate property to his wife by a standard form deed. And the terms of that deed said, I grant you the property. That indicated a change, if you will, in the ownership of the property and satisfied the statute. Okay, counsel, then let's talk about estate of Bibb. Do you have that case? Estate of Bibb. Estate of Bibb. I don't have it here, but I'm familiar with it. Okay. Explain to me, then, why the wording in estate of Bibb that said transfer of the property in a document that conveyed the property in joint tenancy satisfied the transmutation requirement. Because the deed says I, husband, the owner, as I recall, but it actually said I, the husband, the owner of the separate property, grant to husband and wife. And that would indicate that the change, the necessary language indicated the change, from separate property to community property. So if a third party granted, conveyed property to husband and wife as joint tenants, why doesn't that effectuate the same transmutation? Because in that situation, the husband and wife have not signed the deed. There's no declaration there. Is it true that in both McDonald and Barnison, the transfer was between the spouses, as opposed to a transfer from a third party? That is absolutely true. There are no cases I'm aware of. My thought is that that's a critical distinction, and you can't really carry it over the McDonald and Barnison cases to a transfer from a third party. Well, that's certainly from a spouse. In a common law state, if they don't have a statute that makes void the four unities rule, when one spouse comes into the marriage with separate property, he can't convey it to the two of them as tenants by the entirety or joint tenants. He has to convey it to a straw man who conveys it back to them in order to have unity of time. And it looks as though what California has done by statute and judicial interpretation is make it possible for the one spouse to convey to the two spouses so long as it's really clear to turn the separate property into community property. And if it's not really clear, it doesn't work. But it's an altogether different problem from a conveyance from a third party. And it looks to me as though the authorities you're relying on are just for these interspousal conveyances and not conveyances from third parties. There's no question that's exactly what the bankruptcy appellate panel held, and that's why I'm here, because I think they were wrong. I call your attention to page 593 of the Barnison case, and I think it says it best. And it's talking about McDonald. It says McDonald's interpretation of the express declaration language in Section 852, Subdivision A, can be viewed as effectively creating a presumption that transactions between spouses are not transmutations rebuttable by evidence the transaction was documented with a writing containing the requisite language. But again, counsel, that's talking about between spouses. Well, that's true. But how could you possibly get the cash? I mean, somewhere in here, these spouses had community property cash, and they wound up with separate property, real property. There clearly had to be a transmutation along the way or no rules at all. Well, I guess that presupposes that a transmutation has to occur when a third party is involved. And I guess that begs the question that Judge Kleinfeld asked you, whether or not there's any authority in that circumstance that you have. I see no exception to the rule, as I understand it. My understanding of the case, the statute, is that when you have spouses, there is, in effect, a statute of frauds between them, and it's mandatory that the only way they can change their property, and you're suggesting there is an exception to that, and that exception would be when there's a third party so that you're acquiring property. Well, it's not necessarily an exception. An exception is a circumstance that's not included in the statute that you're relying upon. Isn't that what you're suggesting? No. I'm thinking that the California statute at issue in cases we're discussing are merely the California version of the usual statutory repeal of the four unities rule at common law and don't have anything to do with conveyances from third persons. You know, Your Honor, if that's where you're at, I'm not sure I'm going to be able to convince you otherwise. I believe from reading them. You know what I mean about the four unities rule? I can't remember all four of them. In joint tendency, yeah, it's time, but the primary one is the right of survivorship. I know that. That's correct. I don't know that I agree with you, but there are the four unities. So where we're at is, in my view, and I believe in the trustees' view, and certainly I'll tell you I've got a lot of phone calls on this case from lawyers representing trustees around the country, and the question is, did California create this statute of frauds and did it, in creating it, limit the way in which spouses could transmute their property, whether it's separate or community, into another form, and does that statute of frauds include the acquisition of property from a third party? I believe it does, and I believe it does because the cases consistently say the only way you can do it, and what your suggestion is is that an acquisition either is not covered within the definition or is an exception to the definition, and frankly, I don't believe it's warranted. Unless the court has any further questions, I'll reserve what time I have. Thank you, counsel. Thank you. Your Honors, the deed itself that we're talking about, recovering the subject property, has some powerful language, and in addition to the normal recital that the third party grants or granted to the husband and wife their interest as joint tenants, it contained another recital in the deed itself, and it's in the record, and I'll recite it. It says, Eugene Summers and Anne Marie Summers, husband and wife, hereby accept the interest herein conveyed to them as joint tenants with Aurora Summers, an unmarried woman, and they signed under seal of notary right under that recitation. So what they did, essentially, is to adopt the language of conveyance that all of the cases have found sufficient with respect to a transmutation if indeed a transmutation is an issue, and they accepted that exactly as the statute would require them to do in writing were a transmutation an issue, Now, I agree. I don't think that the transmutation was an issue here, and I say that because I've not found any cases at all, and counsel here hasn't cited any where we have a situation like this where you have a third party granting to a husband and wife and somebody challenging that, and the reason is obvious. Who's going to challenge it? Nobody's prejudiced by such a transfer because they own in equal shares as they purchased, and that's why you're not going to see any cases about this. The McDonald case that the counsel cited would have found the language, I give to the account holder any interest I have in the funds deposited in this account sufficient to have sufficient as conveyance language to have constituted a transmutation in that case, and that McDonald and Barnison are different, of course, because they involve interspousal transfers where there is always some suspicion where one spouse ends up with a lot more than the other after the transaction that there was something untoward going on, and that's why the need for a writing, and the writing in each of those cases was very simple. In Barnison, stocks were put in the wife's name but without conveyance language, and so it wasn't clear, the court said there, what was intended. Was it a mere power of attorney or was it an intent to transfer ownership? And again, in Barnison, the court said all that would have been required in order to effectuate a valid transmutation would have been the words, the stocks to be put in the wife's name as her sole and separate property, and that would have done it, simple as that. Counsel, as a matter of curiosity, is a personal injury award a community property in California? Well, the law has gone back and forth. At some point in history, it used to be separate property, and then at the time when the parties, at the time when Mr. Summers got the award, it actually was community property in my understanding, and I think that's still the way the law is. Counsel, is there a legible copy of the deed, the one that was attached to the complaint I couldn't read? Unfortunately, I don't think so. All the copies came out very poorly. But I think in the decision, the court recited what it was, and I think. . . I read the quotes. I just thought I'd like to look at them. Yeah. There was one. Right. And the parties stipulated to it. There was no dispute about it. There was an issue about Haynes. Not only Haynes, but you can look at the case of Schindler, which I cited at page 601, and that was a case, too, in which husband and wife used community funds to purchase property that they put in joint, entitled as joint tenants, and the court had no problem finding that that property was joint tenancy, as the title recited. California law, section, family code section 750, specifically holds that spouses can hold property as joint tenants. It's common. And I don't know why counsel is having such a hard time accepting that. There are even bankruptcy cases. In Ray Reid, I cited, a Ninth Circuit case in which, in a bankruptcy context, the court had no trouble determining the joint tenancy interest of a debtor and a non-debtor and figuring out what the debtor's estate consisted of. So I'm going to reserve the rest of my time, Your Honor. Thank you. Thank you, counsel. Counsel, one thing I don't think we got to in your opening argument was the question whether that recitation in the deed meets the requirements of the law. In my view, it does not, Your Honor, because it does not indicate a change in either the ownership or the characterization of the property. And that's the mandate of McDonnell. It doesn't say that we accept this as joint tenants and recognize that we used to enjoy the proceeds that we used to purchase this as community property. It does, Your Honor, but if you would read McDonnell, McDonnell had a consent, which is just like an acceptance. And it was virtually the identical fact pattern as far as that point goes. Many of the authorities that have been cited in this case, I don't have any problem with in a vacuum. The question is you have competing presumptions here, and they absolutely clash with each other. And the Barnison case is the case that held the more specific presumption regarding the transportation is going to prevail over the evidentiary code. If the Court has any further questions, I'm almost out of time. So I would say that one of the reasons that you don't see these cases come up in a dissolution context is there's also a California presumption that property acquired or held jointly, I think it is, by couples in a dissolution is presumed to be community property. Therefore, this type of issue wouldn't come up in a dissolution situation. Most of the time you're going to see it in a creditor debtor situation or maybe in an estate where beneficiaries. This whole argument, as I understand it, is occurring because there's a rule that the first joint tenancy property falls into the bankruptcy estate of the first of the joint tenants who goes bankrupt. Well, you know, that's correct, Your Honor. And the large dollar creditor in this case, frankly, was created by Mr. Summers. So what would happen is the money would come, if Mr. Summers prevails, Ann Marie Summers' estate will get a third, pay it all out, the creditor will be paid. Sure, she'll have some kind of claim against him, I suppose, but the unfairness of it is apparent. Thank you. Thank you. I'll just comment. It's not really in there. You don't have a rebuttal. OK, sir. Sir, rebuttal. We just don't have sir rebuttal oral arguments. Unless there's a cross appeal. And the Summers is submitted. And we are adjourned until 9 a.m. tomorrow.
judges: Canby, Kleinfeld, Rawlinson